**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**

CASE NO: _____

RAFFIELD FISHERIES, INC.,
MOTOR VESSEL THREE BROTHERS, INC.,
MOTOR VESSEL CAPTAIN CARL, INC.,
MOTOR VESSEL LADY EVELYN, INC.,
MOTOR VESSEL FISHERMANS PRIDE, INC.,
and CAPTAIN SALTY, INC.

      Plaintiffs,

vs.

BP, p.l.c., BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION COMPANY; BP PRODUCTS NORTH AMERICA, INC., BP AMERICA, INC.; TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., TRANSOCEAN HOLDINGS, LLC; HALLIBURTON ENERGY SERVICES, INC.; ANADARKO PETROLEUM CORP., ANADARKO E & P COMPANY, LP; MOEX USA CORPORATION, MOEX OFFSHORE 2007, LLC; and CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION,

      Defendants.
_____/

## **COMPLAINT**

1. Plaintiffs, RAFFIELD FISHERIES, INC., MOTOR VESSEL THREE BROTHERS, INC., MOTOR VESSEL CAPTAIN CARL, INC., MOTOR VESSEL LADY EVELYN, INC., MOTOR VESSEL FISHERMANS PRIDE, INC., and CAPTAIN SALTY, INC., by and through their undersigned attorneys, hereby file this Complaint against Defendants, BP, p.l.c, BP EXPLORATION & PRODUCTION, INC., BP AMERICA PRODUCTION

CASE NO. _____

COMPANY, BP PRODUCTS NORTH AMERICA, INC., BP AMERICA, INC. (collectively referred to herein as "BP" or "the BP Defendants"); TRANSOCEAN, LTD., TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC., TRANSOCEAN DEEPWATER, INC., TRANSOCEAN HOLDINGS, LLC (collectively referred to herein as "Transocean" or "the Transocean Defendants"); HALLIBURTON ENERGY SERVICES, INC. ("Halliburton"); ANADARKO PETROLEUM CORP.; ANADARKO E & P COMPANY, LP ("the Anadarko Defendants"); MOEX USA CORPORATION; MOEX OFFSHORE 2007, LLC ("the MOEX Defendants"); and CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION ("CAMERON"), and allege as follows:

**NATURE OF ACTION**

2. This is a civil action seeking damages and other appropriate relief arising from the unlawful and improper conduct of Defendants towards Plaintiffs. Defendants' conduct resulted in an oil spill, explosion and fire that caused the sinking of a semi-submersible mobile offshore oil drilling platform known as Deepwater Horizon, on or about April 20, 2010. Defendants were operating Deepwater Horizon to drill for oil in an area known as the Macondo prospect in Mississippi Canyon Block 252 on the outer Continental Shelf of the United States ("the Deepwater Horizon site"). As a result of the catastrophic fire, explosion and failure of the Deepwater Horizon and their safety devices, there is an ever growing oil slick of approximately 600 square miles in the Gulf of Mexico, and at least 1.6 million gallons of crude oil have leaked from the oil well it was completing at the time of the explosion. Thousands of barrels of oil continue to leak from the well every day. On April 30, 2010, the State of Florida declared a state of emergency because of the oil spill. The oil slick has caused and will continue to cause harmful effects to the Gulf of Mexico, including the United States' Gulf Coast, the State of

CASE NO. _____

Florida and all contiguous marine, coastal, and estuarine environments, which will severely impact Plaintiffs' property and activities Plaintiffs rely on for income.

## PARTIES

### Plaintiffs

3. Plaintiff RAFFIELD FISHERIES, INC. is a commercial seafood business that also engages in commercial fish shipbuilding, service, parts, repair and support services. Plaintiff is a Florida corporation that has its principal place of business in Port St. Joe, Gulf County, Florida.

4. Plaintiff MOTOR VESSEL THREE BROTHERS, INC. is a commercial fishing boat business and is a Florida corporation that has its principal place of business in Port St. Joe, Gulf County, Florida.

5. Plaintiff MOTOR VESSEL CAPTAIN CARL, INC. is a commercial fishing boat business and is a Florida corporation that has its principal place of business in Port St. Joe, Gulf County, Florida.

6. Plaintiff MOTOR VESSEL LADY EVELYN, INC. is a commercial fishing boat business and is a Florida corporation that has its principal place of business in Port St. Joe, Gulf County, Florida.

7. Plaintiff MOTOR VESSEL FISHERMANS PRIDE, INC. is a commercial fishing boat business and is a Florida corporation that has its principal place of business in Port St. Joe, Gulf County, Florida.

CASE NO. _____

8.  Plaintiff CAPTAIN SALTY, INC. is a commercial fishing boat business and is a Mississippi corporation that has its principal place of business in Port St. Joe, Gulf County, Florida.

### Defendants

9.  Defendant BP, p.l.c. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

10.  Defendant BP EXPLORATION & PRODUCTION, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

11.  Defendant BP AMERICA PRODUCTION COMPANY is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

12.  Defendant BP PRODUCTS NORTH AMERICA, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

13.  Defendant BP AMERICA, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

14.  Defendant TRANSOCEAN, LTD. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

15. Defendant TRANSOCEAN OFFSHORE DEEPWATER DRILLING, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

16. Defendant TRANSOCEAN DEEPWATER, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

17. Defendant TRANSOCEAN HOLDINGS, LLC is a foreign limited liability company subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

18. Defendant HALLIBURTON ENERGY SERVICES, INC. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

19. Defendant ANADARKO PETROLEUM CORP. is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

20. Defendant ANADARKO E & P COMPANY, LP is a foreign limited partnership subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

21. Defendant MOEX USA CORPORATION is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

CASE NO. _____

22. Defendant MOEX OFFSHORE 2007, LLC is a foreign limited liability company subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

23. Defendant CAMERON INTERNATIONAL CORPORATION f/k/a COOPER CAMERON CORPORATION is a foreign corporation subject to the jurisdiction of the courts of Florida by virtue of the conduct alleged herein and/or because it does business in the State of Florida.

## JURISDICTION AND VENUE

24. Jurisdiction of this Court exists because there is complete diversity of the parties and damages exceed $75,000.00 exclusive of interests and costs. Jurisdiction also exists pursuant to 23 U.S.C. §1331 because the harm to Plaintiffs as alleged herein arose from Defendants' conduct on the Continental Shelf and has affected the Gulf of Mexico and coastal areas of Unites States and Florida, which gives rise to federal jurisdiction (and incorporating the laws of Florida) pursuant to 43 U.S.C. §§ 1331(f)(1), 1333(a)(1), and 1333(2)(a).

25. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a), (b), and/or (c) because a substantial part of the events and occurrences giving rise to this action occurred in this district, a substantial portion of property affected by the conduct alleged herein is located in this district, and Defendants are subject to the jurisdiction of this Court.

26. Any prior notice to Defendants that may have been required is waived by the imminent threat to the legal interests of Plaintiffs and/or the actual harm already suffered by Plaintiffs.

CASE NO. _____

## FACTUAL ALLEGATIONS

27.     The BP Defendants hold the U.S. government granted lease allowing them to conduct oil exploration, and oil exploration and production related operations, in the Macondo prospect in Mississippi Canyon Block 252.  The BP Defendants were controlling, managing, leasing, using, and/or operating Deepwater Horizon in order to conduct its oil exploration and production venture on April 20, 2010, when it caught fire and catastrophically failed and sunk, causing the massive oil spill that is the subject of this lawsuit.

28.     The Transocean Defendants were the owners, managers and/or operators of the Deepwater Horizon when it caught fire and catastrophically failed and sunk on April 20, 2010, causing the massive oil spill that is the subject of this lawsuit.

29.     The Anadarko and MOEX Defendants control, respectively, 25% and 10%, of the interest in the BP Defendants' operations in Mississippi Canyon Block 252, including the Deepwater Horizon site.

30.     At all times pertinent to this lawsuit, the BP, Transocean, Anadarko, and/or MOEX Defendants were responsible for the safe operation of Deepwater Horizon such that a massive oil spill should not have occurred, or should have been prevented from occurring.

31.     At all times pertinent to this lawsuit, Plaintiffs relied on the safe operation of the Deepwater Horizon site to prevent the massive oil spill that has harmed and will continue to harm their livelihoods.

32.     Drilling platforms such as Deepwater Horizon use a device called a blowout preventer ("BOP") which is supposed to deliver a hydraulic-powered guillotine-like slice to the drill pipe in the event of a problem and seal the well off.  All U.S. offshore oil rigs are mandated to have BOPs subject to regular inspection.  On Thursday April 28, 2010, in an earnings call to

investors, Defendant Cameron C.E.O. Jack Moore admitted that Cameron manufactured and supplied the BOP on Deepwater Horizon. BOPs are designed to operate automatically in the event of a problem without operator input, however, upon information and belief, BP and/or Transocean personnel also tried to activate the BOP themselves before evacuating the platform and it did not activate. Thus, Defendant Cameron's BOP failed to operate as intended and was defective as designed and/or manufactured.

33. Upon information and belief, during a 2009 earnings call to investors, Transocean admitted knowledge of BOP problems on at least some of its oil drilling platforms.

34. Defendant Halliburton had been engaged by the BP and/or Transocean Defendants to conduct cementing operations on the well. Halliburton has stated that it completed the cementation of "the final production string" twenty hours before the accident, and that tests on the integrity of its casing were completed. But, placement of a final cement casing plug had not yet occurred at the time of explosion. Halliburton's improper and negligent conduct in its cementing duties caused and/or substantially contributed to the explosion and resulting oil spill.

35. The catastrophic explosion and failure of the Deepwater Horizon and its safety and spill prevention systems, and the resulting oil spill, were caused by Defendants' negligence, thus rendering them jointly and severally liable to Plaintiffs for its damages.

36. Defendants also committed various statutory and regulatory violations pertaining, but not limited to, federal and state laws on oil exploration and pollution, workplace safety, marine safety and testing of the BOP. These violations resulted in the harm and damages to Plaintiffs.

37. The massive oil spill resulting from the Deepwater Horizon incident has harmed, will harm and will continue to harm Plaintiffs not only because of Defendant's conduct, but also because the nature of the spill makes containment and clean-up procedures ineffective, thus causing contamination and pollution of the Gulf of Mexico, United States Gulf Coast, including Florida, marine life, coastal waters and contiguous environs.

38. Defendants knew or should have known of the risks of a massive oil spill as a result of their oil exploration activities and the subsequent harm to Plaintiffs, the Gulf of Mexico, the United States Gulf Coast, including Florida, marine life, coastal waters and contiguous environs.

39. Upon information and belief, Defendants did not use appropriate measures and take appropriate actions to prevent the massive oil spill at the Deepwater Horizon site, and thus failed to prevent the harm and damage to Plaintiffs, the Gulf of Mexico, the United States Gulf Coast, including Florida, marine life, coastal waters and contiguous environs.

40. Upon information and belief, Defendants' intentional and reckless conduct resulted in a failure to install available and appropriate safety and spill prevention devices that would have prevented the oil spill or, at the least, minimized the oil spill, had such devices been installed.

41. Upon information and belief, Defendants' acts and omissions were grossly negligent and/or constituted willful misconduct.

42. Although the full extent of the harm caused by the Deepwater Horizon oil spill cannot be ascertained at this time, the oil spill has damaged and will continue to damage the property, livelihood and income of Plaintiffs.

CASE NO. _____

### COUNT I
### NEGLIGENCE
### (Against All Defendants)

43. Plaintiffs incorporate by reference the allegations in Paragraphs 1–42 above as if fully set forth herein, and further allege as follows:

44. The fire and catastrophic failure of Deepwater Horizon and its safety and spill prevention systems, which resulted in the massive oil spill and harm to Plaintiffs as alleged herein was caused by Defendants' concurrent negligence.

45. The Deepwater Horizon, its pipes, casings and the well it was drilling, and all of the related equipment and materials, including its safety and spill prevention devices, were in the care, custody and control of Defendants at the time of the incident giving rise to this action.

46. Defendants knew or should have known that their wrongful acts and omissions would result in harm and damages in the manner set forth herein.

47. Defendants owed a duty to Plaintiffs to exercise reasonable care in the design, construction, operation, management, use, maintenance, and inspection of Deepwater Horizon, its pipes, casings and the well it was drilling, and all of the related equipment and materials, including its safety and spill prevention measures and devices.

48. Defendants breached their duty to Plaintiffs by failing to properly design, construct, operate, manage, use, maintain and/or inspect Deepwater Horizon, its pipes, casings and the well it was drilling, and all of the related equipment and materials, including its safety and spill prevention measures and devices, such that Deepwater Horizon caught fire, exploded, sunk, and continued to leak oil, resulting in a massive oil spill.

49. Defendants further breached their duty to Plaintiffs by failing to properly hire, train, manage and supervise personnel on Deepwater Horizon, including the proper implementation and enforcement of applicable and appropriate regulations and safety measures, such that personnel could have prevented the blow out, and/or reacted to warning signs of the blow-out or the blow-out itself such that harm to Plaintiffs could have been prevented or mitigated.

50. Defendants further breached their duty to Plaintiffs by failing to properly take appropriate actions to prevent, control or contain the oil spill, including the failure to use a working BOP and/or the failure to use and operate available and alternative devices to prevent the massive oil spill.

51. Defendants acted negligently and carelessly without due regard for the safety of others and potential harm to Plaintiffs.

52. As a direct and proximate cause of Defendant's acts and omissions, Plaintiffs have incurred property, economic and other damages and are entitled to recover monetary damages for, but not limited to:  diminution of value to property and business, loss of income and revenue, loss of livelihood, the need to relocate, property damage and any incidental or consequential damages resulting from Defendants' conduct as alleged herein.

53. Defendants have acted with gross negligence or willful misconduct, and/or otherwise acted or failed to act, such that an award of punitive damages is justified.

54. Alternatively, Plaintiffs alleges the applicability of the doctrine of *res ipsa loquitur*.

CASE NO. _____

## COUNT II
## STRICT LIABILITY FOR ABNORMALLY DANGEROUS ACTIVITY
### (Against All Defendants)

55. Plaintiffs incorporate by reference the allegations in Paragraphs 1–42 above as if fully set forth herein, and further allege as follows:

56. By their very operation of Deepwater Horizon, Defendants were engaged in an abnormally dangerous activity.

57. Defendants' drilling operation at the Deepwater Horizon site was an abnormally dangerous activity because:

   a. it created a high degree of risk of harm Plaintiffs;

   b. it involved a likelihood that the harm threatened by Defendants' conduct would be great;

   c. the risk of Defendants' drilling operation required that such drilling be carried on at their peril, rather than at the expense of the innocent Plaintiffs who suffered harm as a result of the drilling operation;

   d. oil drilling is not a matter of common usage in the relevant areas of Florida;

   e. it was inappropriate to the oil exploration area Defendants were operating in; and

   f. any value of the operation to the relevant Florida communities was outweighed by the abnormal risk of harm and actual harm suffered by Plaintiffs.

58. At all times relevant to this action, Defendants were in control of Deepwater Horizon and its related drilling operations, as well as its personnel.

59. The magnitude of the risk of Defendants' operations created an abnormal risk of harm to the waters of United States Gulf Coast, including Florida, coastal and shore areas and

contiguous environs, and to Plaintiffs and their property; a harm that is characteristic of the risk posed by Defendants' operations, and one which has been suffered as a result of the massive oil spill emanating from the Deepwater Horizon site.

60. The massive oil spill resulting from Defendants' abnormally dangerous activity causing physical harm to the environments in which, and/or to property by which, Plaintiffs operates its business, has caused harm and damage to Plaintiffs within the scope of risk created by Defendants' abnormally dangerous activity.

61. The Defendants' abnormally dangerous activity was carried on for their own purposes and created a risk to Plaintiffs that was not a usual risk expected by Plaintiffs or a usual incident to their businesses.

62. Plaintiffs are entitled to compensatory damages and punitive damages for the harm suffered as a result of Defendants' abnormally dangerous activity.

## COUNT III
## STRICT LIABILITY FOR PRODUCT DEFECT
### (Against Defendant Cameron)

63. Plaintiffs incorporate by reference the allegations in Paragraphs 1–42 above as if fully set forth herein, and further allege as follows:

64. At all times relevant hereto, Defendant Cameron was in the business of designing, manufacturing, marketing, selling, and/or distributing the BOP device(s) and system(s) used at the Deepwater Horizon site.

65. Defendant Cameron placed the BOP device(s) and system(s) at the Deepwater Horizon site into the stream of commerce.

66. The BOP device(s) and system(s) at the Deepwater Horizon site that were supplied by Defendant Cameron failed to operate as intended, if at all, and thus caused or

contributed to the oil spill.

67. Defendant Cameron's BOP device(s) and system(s) at the Deepwater Horizon site were defective because they were defectively designed and/or were defectively manufactured such that they did not operate as intended to prevent or minimize the oil spill.

68. As a result of the defect(s), a massive oil spill emanated from the Deepwater Horizon site and has caused, and will continue to cause, harm and damages to Plaintiffs.

69. At the time the BOP device(s) and system(s) used at the Deepwater Horizon site left Defendant Cameron's control, they were in a defective condition and thereby unreasonably dangerous to Plaintiffs.

70. At all relevant times the BOP device(s) and system(s) used at the Deepwater Horizon site were used in the manner intended.

71. Plaintiffs were foreseeable bystanders harmed by the defect(s) in Defendant Cameron's product.

72. As a result of the defect(s) in Defendant Cameron's product, Plaintiffs have suffered harm and damages in an amount to be determined at trial.

73. In addition to any compensatory, incidental, and consequential damages that may be determined, Defendant Cameron's intentional acts and gross negligence have entitled Plaintiffs to punitive damages.

### COUNT IV
### VIOLATION OF FLORIDA ANTI-POLLUTION STATUTES
### (Against All Defendants)

74. Plaintiffs incorporate by reference the allegations in Paragraphs 1–42 above as if fully set forth herein, and further allege as follows:

CASE NO. _____

75. The oil spill emanating from the Deepwater Horizon site, as a result of Defendants' conduct as alleged herein, constitutes a violation of *Florida Statutes* §§ 376.041 and/or 376.302(1)(a), as a discharge of pollutants and/or hazardous substances.

76. Defendants have otherwise violated the provisions of *Florida Statutes* §§ 376.011 to 376.21 and/or 376.30 to 376.317.

77. Defendants had a statutory duty to Plaintiffs to design, construct, operate, manage, use, maintain, and inspect the Deepwater Horizon, its pipes, casings and the well it was drilling, and all of the related equipment and materials, including its safety and spill prevention measures and devices, such that pollutants and hazardous substances were not discharged into and upon the surface waters and coastal areas of Florida.

78. Plaintiffs hereby incorporate the allegations of negligence in paragraphs 43 through 54 herein to the extent they are necessary to demonstrate violations of Florida pollution statutes by Defendants.

79. Pursuant to *Florida Statute* § 376.313(3) Defendants are strictly liable to Plaintiffs as a result of their conduct which caused the prohibited discharge of pollutants and/or hazardous substances.

80. As a direct and proximate result of Defendants' breach of their statutory duties to Plaintiffs, the oil spill emanating from the Deepwater Horizon site has caused detrimental effects to the Gulf of Mexico, the United States Gulf Coast, including Florida, marine life, coastal waters and contiguous environs, and Plaintiffs' property, which Plaintiffs rely on for the continued operation of their businesses and generation of income.

CASE NO. _____

81. Plaintiffs are entitled to statutory damages as well as compensatory damages for the harm suffered as a result of Defendants' conduct as alleged herein.

82. Defendants' acts were intentional and/or consisted of gross negligence or willful misconduct such that punitive damages are warranted.

**WHEREFORE,** Plaintiffs request:

a. An award of such damages as are authorized by law, including compensatory, incidental, consequential, statutory and punitive damages;

b. An award of all reasonable costs and attorneys' fees incurred by Plaintiffs;

c. Trial by jury of all matters so triable; and

d. Such other and further relief as the Court may deem just and proper.

DATED: May 12, 2010.

RESPECTFULLY SUBMITTED BY:

By: *s/Jeremy W. Alters, Esquire*
JEREMY W. ALTERS, ESQUIRE
Florida Bar No. 111790
jeremy@abbrclaw.com
DAVID C. RASH, ESQUIRE
Florida Bar No. 0977764
david@abbrclaw.com
MATTHEW T. MOORE, ESQUIRE
Florida Bar No. 70034
matthew@abbrclaw.com
Alters, Boldt, Brown, Rash & Culmo, P.A.
4141 Northeast 2nd Avenue
Suite 201
Miami, Florida 33137
Telephone:   (305) 571-8550
Facsimile:   (305) 571-8558
Attorneys for the Plaintiffs